UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PHILIP MARINO, ANTHONY ROMANO,
MARY GUESS, JERALD WURMS, and
JAY LEINER, on behalf of themselves and
all others similarly situated,

      Case No. _____

      Plaintiffs,

vs.

BROWARD SHERIFF'S OFFICE,

      Defendant.

## CLASS ACTION COMPLAINT

Plaintiffs, Philip Marino ("Marino"), Anthony Romano ("Romano"), Mary Guess ("Guess"), Jerald Wurms ("Wurms"), and Jay Leiner ("Leiner"), (collectively, "Plaintiffs" or "Former Deputies"), bring this class action lawsuit against Defendant, Broward Sheriff's Office ("Defendant" or "BSO").  Plaintiffs are former BSO Deputies who had the courage to take a job as first responders, often in dangerous and violent situations, to keep the Broward County community safe and secure.  The Former Deputies honorably served Broward County for a period of at least twenty-five years and made these sacrifices as public servants in part because of the Florida pension plan benefits, which guaranteed them a certain level of income after retirement. The Former Deputies and the Class were also guaranteed additional benefits that were provided for in specific collective bargaining agreements between the Former Deputies' union and the BSO. As part of the Florida pension plan, the BSO provides the Florida Retirement System ("FRS") with a calculation of all benefits due and owed to the Former Deputies and the Class, which is then used to determine their monthly retirement payouts.

Now that the Former Deputies are retired, BSO has refused to properly pay their retirement benefits.  BSO has knowingly provided incorrect calculations to the FRS in the past, and refuses to correct those calculations now, intentionally reducing the retirement benefits due the Former Deputies and the Class.  As a result, the Former Deputies and the Class receive a monthly retirement amount from the FRS that is lower than the amount to which they are entitled.  Worse still, BSO has admitted and acknowledged that the Former Deputies are not being paid correctly but refuses to correct the error.  After the sacrifices and service provided by the Former Deputies, BSO should not be allowed to turn its back on them.  The Former Deputies bring this class action lawsuit on behalf of themselves and all other similarly situated former BSO employees to: (1) enforce the terms of the collective bargaining agreements and require BSO to correct the calculation errors provided to the FRS; and (2) to recover the amounts that were improperly withheld from their monthly retirement payment, as well as all other appropriate damages, interest, and penalties permitted under law.

## I.    PARTIES

1.     Plaintiffs, Marino, Romano, Guess, Wurms, and Leiner, are all retired Broward Sheriff's Office ("BSO") Deputies.

2.     Plaintiff Marino is over the age of eighteen and is a resident and citizen of Broward County, Florida.  Deputy Marino was hired by BSO on October 31, 1983, entered Florida's Deferred Retirement Option Program ("DROP") on October 31, 2008, and retired from BSO as a Deputy on June 19, 2009.  Deputy Marino served the BSO for approximately 26 years.

3.     Plaintiff Romano is over the age of eighteen and is a resident and citizen of Broward County, Florida.  Deputy Romano was hired by BSO on February 16, 1982, and entered DROP on

March 1, 2007, and retired from BSO as a Deputy on January 31, 2012.  Deputy Romano served the BSO for approximately 30 years.

4.   Plaintiff Guess is over the age of eighteen and is a resident and citizen of Broward County, Florida.  Deputy Guess was hired by BSO on February 8, 1982, and retired from BSO as a Deputy on January 3, 2013.  Deputy Guess served the BSO for approximately 31 years.

5.   Plaintiff Wurms is over the age of eighteen and is a resident and citizen of Knox County, Tennessee.  Sergeant Wurms was hired by BSO on January 5, 1987, entered Florida's DROP in 2010, and retired from BSO as a Sergeant on May 29, 2015.  Sergeant Wurms served the BSO for approximately 28 years.

6.   Plaintiff Leiner is over the age of eighteen and a resident and citizen of Broward County, Florida.  Deputy Leiner was hired by BSO on September 6, 1983, entered DROP on January 1, 2012, and retired from BSO as a Deputy on February 8, 2013.  Deputy Leiner served the BSO for approximately 30 years.

7.   Defendant, Broward Sheriff's Office ("BSO"), is a full-service, public safety agency.  BSO employs approximately 5,400 employees, including more than 2,800 certified deputies and more than 700 fire rescue professionals.

8.   BSO maintains its headquarters in Fort Lauderdale, Florida, and conducts business, including the matters at issue in this lawsuit, in Broward County, Florida, serving fourteen Broward County cities and towns and all of its unincorporated areas.

## II.   JURISDICTION

9.   This Court has subject matter jurisdiction over this lawsuit pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the amount in controversy

exceeds $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a state different from any defendant.  *See* 28 U.S.C § 1332(d)(2)(A).

10.      The Court has personal jurisdiction over the Defendant pursuant to § 48.193, Fla. Stat., because Defendant: (a) operates, conducts, engages in, or carries on a business or business venture in this state; (b) has an office or agency in this state; (c) committed a tortious act within this state; (d) breached a contract in this state by failing to perform acts required by the contract to be performed in this state; and (e) is engaged in substantial and not isolated activity within this state.

11.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the causes of action accrued within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred here.

### III.      FACTUAL ALLEGATIONS

**A.      The Union Representing The Former Deputies Entered Into Collective Bargaining Agreements With BSO That Governed Retirement Benefits.**

12.      The Former Deputies were all hired by BSO as sworn law enforcement officers between 1982 and 1987.

13.      While employed by BSO, the Former Deputies were members of the Police Benevolent Association Law Enforcement Deputies/Sergeants Bargaining Unit ("PBA") union.

14.      On behalf of the Former Deputies and other PBA members, the PBA entered into a collective bargaining agreement ("CBA") with BSO.

15.      The CBA between the PBA and BSO provided the Former Deputies and other PBA members with rights and benefits related to their employment, including wages, hours, terms, and conditions of employment.  The CBA also included certain applicable retirement benefits through

the Florida Retirement System ("FRS") and the Florida Deferred Retirement Option Program ("DROP").

16.     The CBA between the PBA and BSO has been occasionally revised and updated over the years.  Those revisions and updates are immaterial to the claims in this case, and the relevant terms governing retirement benefits are materially identical over the Class period.

17.     Specifically, at the time of his retirement, Deputy Marino was a party to the CBA dated October 1, 2007, through September 30, 2010 ("CBA #1").  [*See* CBA #1, Ex. 1].  At the time of his retirement, Deputy Romano was a party to the CBA dated October 1, 2010 through September 30, 2012 ("CBA #2").  [*See* CBA #2, Ex. 2].  At the time of their retirement, Deputies Guess and Leiner and Sergeant Wurms were parties to the CBA dated October 1, 2012 through September 30, 2015 ("CBA #3").  [*See* CBA #3, Ex. 3].

**B.     The Mechanics Of The Florida Retirement System.**

18.     When the Former Deputies and the members of the Class retired from BSO or entered the DROP program, they were all eligible for and participated in the FRS Pension Plan.

19.     Eligible employers, like BSO, participate in the FRS by making contributions for the benefit of its employees at a rate established by Florida law.

20.     The FRS Pension Plan is a deferred benefit plan in which certain benefits are guaranteed at retirement.  The amount of the benefits is determined by a formula.

21.     First, the base of the formula is the "final compensation" the retiree was receiving at the time of separation from employment.  *See* Fla. Stat. § 121.021.  In other words, the base of the formula is the retiree's contractual annual salary at the time of separation.

22.     Second, other payments that a retiree may be entitled to, including benefits provided for in the CBA, are then added to the base rate to determine the total monthly retirement payment.

23.     BSO is tasked with calculating both the base rate, based on "final compensation," and any additional payments a retiree is entitled to, and provides that information to the FRS.  The FRS uses the information from BSO to calculate the retirees' monthly payments.

**C.     BSO Did Not Include The Former Deputies' Supplemental Pay In The Calculations It Provided To The FRS.**

24.     The Former Deputies' and the Class' CBAs provide for additional benefits, apart from their base rate or the contractual annual salary.

25.     These benefits are provided for in the CBAs and referred to as "supplemental pay." "Supplemental pay" includes, among others: (1) SWAT team supplements; (2) Criminal Investigations Supplements; (3) Incentive Course Pay; (4) Critical Incident Pay; (5) Field Officer Training Supplements; (6) First Responder Pay; and (7) other supplements.   [*See* CBA #1 at Article 37 at 37-40; Article 29 at 41, Ex. 1]; [*See* CBA #2 at Article 18 at 25-26; Article 23 at 31, Ex. 2]; [*See* CBA #3 at Article 18 at 25-26; Article 23 at 31, Ex. 3].

26.     To prepare payroll for its employees, including for the Former Deputies and the members of the Class, BSO was required to take the base rate and add any applicable benefits, including any supplemental pay benefits to which an employee was entitled.  Together, this is the amount used to determine the FRS monthly retirement payment.

27.     Over the last twenty years, BSO has not included supplemental pay benefits in the calculations it provided to the FRS.

28.     Although the base rate, the contractual salary rate, has been included, the total monthly retirement payment is incorrect and lower than it should be because BSO has not included

supplemental pay benefits in the calculation it provided to the FRS.  As a result, the Former Deputies' and the Class' monthly retirement payments have been and are presently lower than they should be.

**D.      A New Union Enters Into A New CBA With BSO In 2015.**

29.      In 2015, after the Former Deputies retired, the PBA was replaced by a different union, the International Union of Police Associations, AFL-CIO, Local 6020 ("IUPA").

30.      Since 2015, the IUPA has served as the bargaining representative on behalf of the BSO's employees.

31.      The former employees that retired prior to 2015, like the Former Deputies, are not represented by the IUPA.

32.      On October 1, 2015, the IUPA and the BSO entered into a new CBA ("2015 CBA") on behalf of the then-current employees of the BSO.

33.      Because the Former Deputies had already retired and were no longer employed by the BSO in October 2015, they were not members of IUPA or a party to the CBA between the BSO and the IUPA.

34.      However, the terms that govern retirement benefits in the 2015 CBA are nearly identical to the terms in the CBAs that govern the Former Deputies retirement payments.

**E.      The August 24, 2018, Arbitration Finds That BSO Has Failed To Include Supplemental Pay In The Calculations Its Provides To The FRS.**

35.      In early 2018, a BSO Sergeant who was preparing to retire believed his benefits were less than what he was entitled to under the 2015 CBA.

36.      The BSO Sergeant took his concerns to the IUPA which filed a grievance with BSO in June 2018.

37.     The IUPA and BSO were unable to resolve the grievance and participated in arbitration in June and July 2018.

38.     On August 24, 2018, Arbitrator Michael Whelan issued an "Opinion and Award" in the matter, *IUPA v. BSO,* Case No. 180207-01216.  [*See* Opinion and Award, Ex. 4].

39.     Arbitrator Whelan determined that the BSO Deputies' retirement payment "must include [the base] rate plus any and all . . . supplements that they received when they were last on payroll."  [*See id.* at 20].  Additionally, BSO Deputies who had already received payouts that included only their base rate "must be made whole for the remaining amounts based on the value of their supplements."  [*See id.*].

40.     However, because the IUPA became the bargaining representative for BSO's employees after the Former Deputies had already retired, the Former Deputies were not members of the IUPA nor parties to the 2015 CBA.  Thus, even though the terms of the Former Deputies' CBAs were nearly identical to the 2015 CBA at issue in the August 24, 2018 arbitration order, the Former Deputies were not directly covered by Arbitrator Whelan's Opinion and Award ("Opinion").

**F.     The Former Deputies Try To Obtain Relief Through The PBA.**

41.     In early September 2018, the Broward County Sheriff's Office Retiree Association ("BSORA"), which represents retired employees from BSO including the Former Deputies, sent a letter to its members regarding the Opinion.

42.     BSORA's letter explained that the Opinion applied directly to the IUPA members who separated or entered DROP starting in December 2017, and that those members' payments would be recalculated retroactively and going forward.

43.     Although the Opinion did not apply to individuals who separated from BSO prior to December 2017, including the Former Deputies, the BSORA letter explained that those individuals could file their own fair wage complaints against the BSO for underpayments and to have their FRS calculations modified going forward.

44.     In September 2018, the Former Deputies made numerous attempts to seek relief through the PBA they had once been members of, as well as the IUPA, but they were unable to obtain assistance since they were no longer members of either union.

45.     On September 25, 2018, a representative of the PBA retirees, of which the Former Deputies were a part, sent a formal demand to then Sheriff Scott Israel demanding that BSO make all PBA retirees whole by recalculating and reissuing their payments, including accrued sick time, holiday and vacation time, and compensatory time.

46.     On October 11, 2018, the BSO Office of the General Counsel ("BSO GC") responded, acknowledging that it made errors in calculating the pay of the PBA retirees, but that BSO would not be correcting its errors because the Opinion did not apply to them.

47.     On November 27, 2018, the BSO GC sent another letter to the PBA retirees again stating that the Opinion only applied to retirees who separated or entered DROP starting in December 2017.

48.     On February 12, 2019, after former Sheriff Israel was replaced by Sheriff Gregory Tony, an individual representing the PBA retirees sent another demand letter asking that Sheriff Tony consider the request for a remedy.

49.     On March 4, 2019, the BSO GC responded and advised again that the Opinion only applied to retirees who separated or entered DROP on or after December 19, 2017, but that revised payouts would be made starting in March 2019.

50.     Since that time, the Former Deputies have not received any payouts in connection with the BSO's erroneous calculations and were left with no choice but to retain counsel and file this lawsuit.

51.     On July 17, 2019, Plaintiffs' counsel sent a letter to the BSO GC informing BSO that the Former Deputies had learned of BSO's errors in calculating their rate of pay for retirement benefits, that they had been attempting to obtain relief, and that BSO was required to correct its errors by reimbursing the Former Deputies for the shortages in past retirement payments and correcting their payments going forward.  [*See* Letter, Ex. 5].

52.     The BSO GC failed to respond to the July 17, 2019, letter and has to date refused to compensate the Former Deputies and other similarly situated retirees for the shortfalls in their retirement benefits resulting from the BSO's admitted improper calculations of their rates of pay.

53.     Left with no other choice, on January 30, 2020, four of the Former Deputies filed a lawsuit in Broward County Circuit Court alleging claims against BSO based on BSO's failure to correct their retirement benefits despite acknowledging that it had been miscalculating the rate of pay for those benefits for more than twenty (20) years. However, after filing the lawsuit in Circuit Court, the plaintiff in that lawsuit learned that numerous other Former Deputies and retirees wanted to join in their lawsuit.  The numbers of Former Deputies and retirees who wanted to join the lawsuit were so numerous that including them in the pending lawsuit or filing separate lawsuits was impracticable.  Therefore, the Former Deputies determined that the most practical way to proceed with their claims was the filing of a class action complaint pursuant to CAFA.

54.     The Former Deputies did not know and did not reasonably have a way of knowing about the miscalculations until August 2018. Their efforts since then to have BSO correct the errors have gone unanswered.  The inadequate payments to the Former Deputies are ongoing and have

not been corrected through the present. Therefore, this action is brought within the applicable statute of limitations.

55.    All other conditions precedent to the filing of this action have been satisfied or waived.

56.    The Former Deputies bring this class action to seek correction of the errors and recovery of their losses, for themselves as well as for those who are similarly situated.

## IV.    CLASS ACTION ALLEGATIONS

57.    The Former Deputies bring this action against BSO pursuant to Rules 23(a), (b)(2), and (b)(3), of the Federal Rules of Civil Procedure, on behalf of themselves and all other persons and entities similarly situated.  The Former Deputies seek certification of the following classes (referred to collectively as the "Class"):

**The 2007 CBA Class**

All BSO employees whose retirement benefits are governed by the CBA entered into between the PBA and the BSO dated October 1, 2007, who did not have supplemental pay included in their retirement benefits within the applicable limitations period.

Excluded from the Class is BSO and its affiliates, related entities, directors, corporate officers, and their immediate family members, and any governmental entity.

**The 2010 CBA Class**

All BSO employees whose retirement benefits are governed by the CBA entered into between the PBA and the BSO dated October 10, 2010, who did not have supplemental pay included in their retirement benefits within the applicable limitations period.

Excluded from the Class is BSO and its affiliates, related entities, directors, corporate officers, and their immediate family members, and any governmental entity.

**The 2012 CBA Class**

All BSO employees whose retirement benefits are governed by the CBA entered into between the PBA and the BSO dated October 1, 2012, who did not have supplemental pay included in their retirement benefits within the applicable limitations period.

Excluded from the Class is BSO and its affiliates, related entities, directors, corporate officers, and their immediate family members, and any governmental entity.

A.    **Numerosity**

58.    Each of the classes consists of hundreds of former BSO employees who were members of the PBA and thus parties to an applicable CBA at the time of their retirement, and entitled to supplemental pay benefits that were not included in their monthly retirement payments from the FRS.  As a result, these individuals are all receiving less retirement benefits than what they are owed under their respective CBAs.

59.    The names and addresses of all Class members can be identified in the business records maintained by BSO, as they are all former BSO employees.  The precise number of Class members will be obtained through discovery but number in the thousands. The Plaintiffs do not anticipate any difficulties in the management of this lawsuit as a class action.

B.    **Commonality**

60.    There are questions of law and fact that are common to the claims of the Former Deputies and the Class.  These common questions predominate over any questions that are particular to any individual Class member.  Among such common questions of law and fact are the following:

a.    Whether BSO incorrectly provided information to the FRS which excluded amounts of supplemental pay from the calculation of Class members' retirement payments;

b.  Whether BSO knowingly failed to correct the improper information provided to the FRS regarding the calculation of the Class members' retirement payments;

c.  Whether BSO breached the respective CBAs by refusing to include supplemental payments in the calculation used to determine the retirement benefits of Class members;

d.  Whether BSO was unjustly enriched by withholding and retaining payments due to Class members under their respective CBAs;

e.  Whether, in the absence of any remedy at law, BSO should be ordered to correct the information regarding the Class members' rates of pay and provide the correct information to the FRS; and

f.  The amount of damages the Class members sustained as a result of BSO's wrongful conduct, and the proper measure of such damages.

**C.    Typicality**

61.    The Former Deputies' claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of BSO's unlawful conduct.  Each Class member sustained damages as a result of BSO's wrongful conduct in the same manner as the Former Deputies – that is, each Class member received and will continue to receive lower monthly retirement payments based on a willfully incorrect calculation by BSO, contrary to the express terms of the CBAs that require that supplemental pay be included to determine retirement benefits.

**D.    Adequacy of Representation**

62.    The Former Deputies are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  The Former Deputies are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between the Former Deputies and the unnamed

Class members.  The Former Deputies anticipate no difficulty in the management of this litigation as a class action.

63.     To prosecute this case, the Former Deputies have chosen the law firms of Buckner + Miles and Damian & Valori.  These law firms are experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**E.     Requirements of Fed. R. Civ. P. 23(b)(3)**

**1.     Predominance**

64.     The questions of law or fact common to the claims of the Former Deputies and the Class predominate over any questions of law or fact affecting only individual members of the Class.  All claims by the Former Deputies and the unnamed Class members are based on BSO's unlawful conduct in withholding supplemental pay from the calculation it provided to the FRS to determine the Class members' monthly retirement benefit, in breach of the express terms of the CBAs that provided supplemental pay benefits to Class members.

65.     Common issues predominate where, as here, liability can be determined on a Class-wide basis.

66.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class, as it is in this case, common questions will be held to predominate over individual questions.

67.     Because all claims by the Former Deputies and the unnamed Class members are based on the same misconduct by BSO, in particular, that BSO withheld supplemental pay from the calculation it provided to the FRS which resulted in lower monthly retirement payments to the

Class members—in direct contravention of the express terms of the applicable CBAs — the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.

   **2.   Superiority**

68.   A class action is superior to hundreds of individual actions in part because of the non-exhaustive factors listed below:

   a.   Joinder of all Class members would create extreme hardship and inconvenience because of their geographical dispersion. Class members may reside throughout the State of Florida, and/or possibly throughout the United States.

   b.   Individual claims by the Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. Defendant is large and well-funded. Moreover, as retirees, the Class members are on fixed incomes and may have health-related issues that may make them reluctant or unable to pursue their claims individually, even if they had the resources to do so. As a result, individual Class members are unable to prosecute and control separate actions.

   c.   The interests of justice will be well served by resolving the common disputes of potential Class members in one forum.

   d.   The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

**COUNT I**
**BREACH OF CONTRACT**
**(ON BEHALF OF ALL CLASSES)**

69.   The Former Deputies re-allege and incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

70.   There are three operative CBAs at issue here that were entered into between BSO and PBA.

71.   All three CBAs provide for various supplemental pay benefits. The supplemental pay benefits include, among others: (1) SWAT team supplements; (2) Criminal Investigations Supplements; (3) Incentive Course pay; (4) Critical Incident Pay; (5) Field Officer Training

Supplements; and (6) First Responder Pay.   [*See* CBA #1 at Article 37 at 37-40; Article 29 at 41, Ex. 1]; [*See* CBA #2 at Article 18 at 25-26; Article 23 at 31, Ex. 2]; [*See* CBA #3 at Article 18 at 25-26; Article 23 at 31, Ex. 3].

72.     Accordingly, BSO promised the Former Deputies and the Class members that it would provide supplemental payment pursuant to the terms outlined in each of the three CBAs.

73.     The BSO breached each of the CBAs by failing to include supplemental payments in their calculations to the FRS, which was required under the express terms of each CBA, resulting in lower monthly retirement payments to the Former Deputies and the Class members.

74.     By withholding supplemental pay from the calculations BSO provided to the FRS, the payments to the Former Deputies and the Class members are below the total amount of outstanding wages and benefits owed to them under the CBAs.

75.     As a result of the BSO's breach of each of the CBAs, the Former Deputies and the Class members incurred damages.

WHEREFORE, the Former Deputies, on behalf of themselves and all similarly situated individuals and entities, demand judgment against BSO for compensatory damages, pre- and post-judgment interest, attorneys' fees, costs incurred in bringing this action, and any other relief the Court deems just and proper.

## COUNT II
## DECLARATORY JUDGMENT
## (ON BEHALF OF ALL THREE CLASSES)

76.     The Former Deputies re-allege and incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

77.     Pursuant to 28 U.S.C. § 2201(a), the Former Deputies and Class members seek judicial determination of their rights, specifically that BSO provided incorrect information to the

FRS upon which the Former Deputies' and Class members' retirement pay is based and that BSO knowingly failed to correct the improper information provided to the FRS.

78.      An actual and substantial controversy has arisen and exists regarding whether BSO provided incorrect information to the FRS upon which the Former Deputies' and Class members' retirement pay is based and whether BSO knowingly failed to correct the improper information provided to the FRS.

79.      The Former Deputies and Class members are in actual, practical and present need for a judicial declaration because they continue to receive less retirement benefits than what they are entitled to under the applicable CBAs as a result of the incorrect information provided to the FRS by BSO, and BSO refuses to correct its improper calculations.  As such, this controversy is of sufficient immediacy and warrants the issuance of a declaratory judgment.

80.      The declaration in question deals with a present ascertained or ascertainable state of facts or present controversy as to a state of facts.  The privileges or rights of the Former Deputies and Class members are dependent upon the facts or the law applicable to the facts.

81.      The Former Deputies and Class members have an actual, present, adverse, and antagonistic interest to that of BSO in the subject matter, either in fact or law.

WHEREFORE, the Former Deputies, on behalf of themselves and all similarly situated individuals and entities, request this Court declare that (1) BSO provided incorrect information to the FRS regarding the Former Deputies' and Class members' rate of pay for purposes of determining retirement pay; (2) BSO failed to correct the information provided to the FRS regarding the Former Deputies' and the Class members' rate of pay for purposes of determining retirement pay; and (3) grant any other relief this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT
## (ON BEHALF OF ALL THREE CLASSES)

82.     The Former Deputies re-allege and incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

83.     BSO withheld, and continues to withhold, retirement benefits from the Former Deputies and Class members that are due to them according to the rights prescribed by the CBAs to which the Former Deputies, other Class members, and BSO are parties.

84.     Plaintiffs and the Class members directly conferred a benefit on BSO in the form of the service they provided to BSO.  Between February 1982 and February 2015, the Former Deputies worked for BSO, endangering their own safety and well-being in the line of duty, and earned supplemental pay which should have been used to calculate their retirement benefits.

85.     At the time the Former Deputies and Class members retired or entered DROP, BSO failed to include the supplemental payments as a part of their calculation for their retirement benefits.

86.     The Former Deputies and Class members have conferred a benefit on BSO, which BSO appreciated, accepted and retained, but BSO has not fully compensated the Former Deputies and/or Class members.

87.     Thus, BSO has been unjustly enriched and the Former Deputies and Class members have been underpaid and continue to be underpaid as a result of BSO's miscalculations.

88.     The circumstances are such that it would be inequitable to allow BSO to retain the payments that are due to the Former Deputies and Class members for their service.

WHEREFORE, the Former Deputies, on behalf of themselves and all similarly situated individualss, demand judgment against BSO for compensatory damages, punitive damages, pre-

and post-judgment interest, attorneys' fees, costs incurred in bringing this action, and any other relief the Court deems just and proper.

**COUNT IV**
**INJUNCTIVE RELIEF**
**(ON BEHALF OF ALL THREE CLASSES)**

89.     The Former Deputies re-allege and incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

90.     The Former Deputies and Class members are entitled to retirement benefits that are calculated based on their base salary rate as well as other entitlements and benefits, including supplemental pay benefits.

91.     BSO provided inaccurate information to the FRS by withholding the amounts due to the Former Deputies and Class members for supplemental pay benefits.

92.     BSO failed and continues to refuse to correct the inaccurate information provided to the FRS despite requests from the Former Deputies to do so.

93.     BSO's continued misconduct, unless and until enjoined by order of this court, will cause irreparable injury to the Former Deputies and Class members in that, as a direct and proximate cause of BSO's conduct, the Former Deputies and Class members will continue to receive less retirement benefits than which they are entitled to under the CBAs.

94.     Where multiple lawsuits are required to redress repeated wrongs, there is no adequate remedy at law and irreparable harm exists.

95.     Requiring BSO to include the supplemental pay in its calculation provided to the FRS does not place an undue hardship on BSO because it is required to do so under the terms of each applicable CBA.  Moreover, BSO's failure to include the supplemental pay in the calculation it provided to the FRS places a substantial and significant burden on the Class members because

it deprives them of income to which they are otherwise entitled.  Moreover, the public interest is served here because the public has a right to the enforcement of contractual requirements and correct payments of bargained-for benefits, and such relief will enforce the lawful contract rights of the Former Deputies and Class members and restrain BSO from engaging in further unlawful conduct depriving the Former Deputies and Class members of their full retirement pay.

WHEREFORE, the Former Deputies, on behalf of themselves and all similarly situated individuals, demand judgment against BSO, granting the following relief: (1) a temporary injunction ordering BSO to correct the information regarding the Former Deputies' and Class members' retirement payments and provide the corrected information to the FRS; (2) a permanent injunction of the above-entitled cause requiring BSO and BSO's agents, servants, employees, and attorneys, and any persons in active concert or participation with BSO, to correct the inaccurate information provided to the FRS regarding the Former Deputies' and Class members' rate of pay used to calculate their retirement payments; (3) costs of suit incurred in this action; and (4) any other and further relief as this Court deems just, equitable, and proper.

<b>RELIEF REQUESTED</b>

Plaintiffs respectfully request that this Court:

A.    Certify this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3); appoint Plaintiffs the representatives of their respective Classes and appoint Buckner + Miles and Damian & Valori as Class Counsel.

B.    Award Plaintiffs and the Class all common law, compensatory, and special damages as well as restitution and statutory remedies for Defendant's violations of law and breaches of contract, including pre- and post-judgment interest on these amounts.

C.    Award Plaintiffs and the Class declaratory relief for the Defendant's breach of contract.

      D.      Award Plaintiffs and the Class injunctive relief and order Defendant to correct the information regarding Plaintiffs' and Class members' rate of pay and to provide the corrected information to the FRS.

      E.      Award Plaintiffs and the Class their attorney's fees, costs, and expenses.

      F.      Award Plaintiffs and the Class such further relief as is appropriate in the interests of justice.

**DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted by law.

DATED:  May 19, 2020                Respectfully submitted,

**BUCKNER + MILES**

By _/s/ Seth Miles_
Seth Miles, Esq., FBN 385530
David M. Buckner, Esq., FBN 60550
Brett E. von Borke, Esq., FBN 0044802
3350 Mary Street
Coconut Grove, Florida 33133
Telephone: 305.964.8003
E-mail: david@bucknermiles.com
E-mail: seth@bucknermiles.com
E-mail: vonborke@bucknermiles.com

Melissa Damian Visconti, Esq., FBN 68063
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Office: 305.371.3960
E-mail: mvisconti@dvllp.com

_Counsel for Plaintiff and the Proposed Class_