# EXHIBIT 2

# COLLECTIVE BARGAINING AGREEMENT

## between the

## BROWARD SHERIFF'S OFFICE



*Pride in Service with Integrity*

## and the

## THE BROWARD COUNTY
## POLICE BENEVOLENT ASSOCIATION
## LIEUTENANTS BARGAINING UNIT



## OCTOBER 1, 2010 – SEPTEMBER 30, 2012

# TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| | Preamble | 3 |
| 1 | Recognition | 4 |
| 2 | Non-Discrimination | 5 |
| 3 | Management Rights | 6 |
| 4 | Work Rules and Regulations | 7 |
| 5 | No Strike or Work Stoppage | 8 |
| 6 | Bulletin Boards | 9 |
| 7 | PBA Representative/Union Business | 10 |
| 8 | Communications Policy | 12 |
| 9 | Union Deductions | 13 |
| 10 | Workweek and Exempt Employee Package | 14 |
| 11 | Lay Off/Recall | 15 |
| 12 | Leave of Absence Without Pay | 16 |
| 13 | Equipment | 17 |
| 14 | Uniforms | 19 |
| 15 | Retirement Benefits | 20 |
| 16 | American with Disabilities Act | 22 |
| 17 | Salary | 23 |
| 18 | Special Benefits | 25 |
| 19 | Vacation Pay Provisions | 27 |
| 20 | Bereavement Leave | 28 |
| 21 | Light Duty Assignments | 29 |
| 22 | Out of Classification Pay | 30 |
| 23 | Training and Tuition | 31 |
| 24 | Transfers | 32 |
| 25 | Personnel Records | 33 |
| 26 | Discharge and Discipline | 34 |
| 27 | Grievance Procedure | 35 |
| 28 | Drug and Alcohol Testing | 39 |
| 29 | Insurance | 40 |
| 30 | Vacation and Holidays | 41 |
| 31 | Military Leave | 45 |
| 32 | Sick Leave | 46 |
| 33 | Probation | 48 |
| 34 | Savings Clause | 49 |
| 35 | Reproduction of Agreement | 50 |
| 36 | Term of Agreement | 51 |
| Appendix A | Monthly Insurance Rates | 52 |
| Appendix B | Salary Schedule | 53 |
| Appendix C | LOU – DROP/Retirement Exception | 54 |
| Appendix D | MOU – Salary Compression | 56 |

## PREAMBLE

THIS AGREEMENT is entered into this October 1, 2010, by and between Broward County Sheriff's Office (hereinafter referred to as "BSO"), and the BROWARD COUNTY POLICE BENEVOLENT ASSOCIATION, INC. (hereinafter referred to as the "PBA" or the "Association"), as the sole and exclusive bargaining representative of the bargaining unit members within the certified Bargaining Unit.

## WITNESSETH

WHEREAS, the PBA has been determined to be the certified bargaining representative of the bargaining unit members within the certified unit by the Public Employees Relations Commission based upon the Special Act of the Florida Legislature, House Bill 93-865, which inter alia, provides for rights of collective bargaining for specified deputy sheriffs, including those holding the rank of Lieutenant, employed by the Sheriff of Broward County;

WHEREAS, the Sheriff's obligation to bargain and to enter into this Agreement, which might in any way alter the Sheriff's rights under the Florida Constitution or at common law, is solely based upon the Special Act referred to herein above;

WHEREAS, the Sheriff and the PBA have negotiated in good faith, with the PBA acting, as the exclusive agent for personnel included in the certified unit with respect to wages, hours, and terms and conditions of employment; and

WHEREAS, the parties, following extended and deliberate negotiations, and having had an opportunity to freely discuss any and all issues, have reached certain understandings which they desire to confirm in this Agreement.

IN CONSIDERATION of the following mutual covenants, it is hereby agreed as follows:

## ARTICLE 1

## <u>RECOGNITION</u>

The Sheriff recognizes the PBA as the sole and exclusive bargaining agent for the Bargaining Unit of employees as certified by the Public Employees Relations Commission, Certification # 93-30, with respect to the working conditions, rate of pay and other conditions of employment for those bargaining unit members of the Sheriff working within the certified unit, to-wit;

### <u>INCLUDED</u>:

All regular, full-time sworn law enforcement officers employed by the Broward County Sheriff's Office in the position of Deputy Sheriff with a rank of Lieutenant.

### <u>EXCLUDED</u>:

All other employees of the Broward County Sheriff's Office including all other sworn law enforcement personnel and employees who are managerial, confidential, temporary, reserve, part time and probationary as provided for in Chapter 93-370, Laws of Florida.

## ARTICLE 2

## <u>NON-DISCRIMINATION</u>

2.1   No bargaining unit member covered by this Agreement will be discriminated against by the Sheriff because of membership in the PBA, or authorized activity as required in this Agreement on behalf of the PBA.

2.2   The PBA will not discriminate against bargaining unit members covered by this Agreement on the basis of their refusal to become a PBA member.

2.3   Both the Sheriff and the PBA oppose discrimination on the basis of age, race, creed, color, national origin, sex, handicap/disability, marital status or religion. However, the parties also recognize that the Sheriff has established an internal procedure to investigate and resolve alleged cases of discrimination which is in addition to existing and adequate procedures established by Broward County, the State of Florida and the Federal government. Accordingly, it is agreed that allegations of employment discrimination cannot be processed through the contractual grievance/arbitration procedure.

## ARTICLE 3

## **MANAGEMENT RIGHTS**

The PBA recognizes the right of the Sheriff to operate, manage, and direct all affairs of his office, including the exclusive right, subject to the terms of this Agreement, which arises solely from the Special Act of the Florida Legislature, House Bill 93-865:

3.1     To manage and direct all employees of the Sheriff's Office.

3.2     To hire, rehire, reinstate, promote, transfer, schedule, assign, retain and layoff employees in position with the Sheriff's Office.

3.3     To suspend, demote, discharge, or take other disciplinary action against employees for just cause.

3.4     To maintain the efficiency of the operation of the Sheriff's Office.

3.5     To determine the structure and organization of the Sheriff's office, including the right to supervise,subcontract, expand, consolidate or merge any division thereof.

3.6     To determine the number of all employees who shall be employed by the Sheriff, the job makeup, activities, assignments, and the number of hours and shifts to be worked per week, including starting and quitting times of all employees.

3.7     To determine the number, types, and grades of positions or employees assigned to an organizational unit, department or project, and the right to alter, combine, reduce, expand,or cease any position.

3.8     To determine internal security practices.

3.9     The exercise of the above-defined rights by the Sheriff shall not preclude employees or the PBA from raising grievances should decisions on the above matters have the practical consequences of violating the terms of this Agreement.

3.10    The PBA acknowledges that the Sheriff may make amendments, revisions, additions, deletions and/or changes to the Sheriff's Policy and Procedures Manual. Any changes to the Manual shall be provided to the PBA ten (10) days prior to issuance, when practicable. This does not constitute a waiver of the PBA's right to impact bargaining. However, impact bargaining will be deemed waived if not requested in writing to the Sheriff within 30 days of change.

## ARTICLE 4

## <u>WORK RULES AND REGULATIONS</u>

4.1   It is recognized that the Sheriff currently has work rules, regulations, policies and procedures governing employment. The parties agree that the Sheriff has the sole and exclusive discretion to formulate, amend, revise and implement such rules, regulations, policies and procedures.

4.2   In the event that any rule, regulation, policy or procedure conflicts with this Agreement, the language in this Agreement shall control.

## ARTICLE 5

## <u>NO STRIKE OR WORK STOPPAGE</u>

The PBA, its officers, agents, representatives, and its bargaining unit members and employees agree that they will not strike, as defined by the Public Employees Relations Act, and agree not to participate in a strike against the Sheriff by instigating or supporting a strike, nor shall the bargaining unit members participate in a work stoppage, slowdown, sick out, job actions or picketing in furtherance, of any of the above-prohibited activities. The parties agree that any bargaining unit member who participates in or promotes any of the aforesaid activities may be discharged or otherwise disciplined by the Sheriff.

## ARTICLE 6

### BULLETIN BOARDS

6.1    The Sheriff agrees to permit reasonable use of all departmental bulletin boards located within the Sheriff 's office by the PBA to be used for official Bargaining Unit notices only.

6.2    The PBA may provide written requests to the Sheriff to place its bulletin boards, at the sole expense of the PBA, at each one (1) of the District Offices and the Broward County Public Safety Building.

6.3    The Sheriff, in his sole discretion, shall determine the size, location and type of bulletin boards which may be provided by the PBA. The PBA agrees that it may only use and/or post one (1) bulletin board at each District and that those bulletin boards shall not be locked or enclosed.

## ARTICLE 7

## PBA REPRESENTATIVE/UNION BUSINESS

7.1     The Sheriff recognizes the right of the PBA to designate PBA representatives as it deems appropriate, with the understanding that representatives will be appointed based on location and shift, not to exceed more than two (2) representatives per shift and not more than one (1) representative from any one (1) District and/or from any one (1) specialty unit per shift. The PBA shall provide BSO command with a list of its designated representatives (and any alternates) and shall update such list as are made.  Only those representatives (or alternates) so designated shall be authorized to changes utilize the PBA time pool bank pursuant to the provisions set forth below.

7.2     The Sheriff agrees to contribute up to a total of fifty (50) hours per year to a PBA time pool for all bargaining unit members. Such time shall be utilized by PBA representatives, if necessary, for bargaining unit business as, set forth in Section 7.5. Unused hours will not be carried over to the following year.

7.3     The PBA members may donate additional time to a PBA time pool up to a total of fifty (50) hours per year. Such time shall be utilized by PBA representatives, if necessary, for bargaining unit business as set forth in Section 7.5. Donated bargaining unit member time can be carried over to the following year.

7.4     For each bargaining unit member who is authorized to use time from the time pool, the bargaining unit member shall fill out the appropriate form as provided by BSO. This form shall be processed through the command of the bargaining unit member who is to use pool time. Command personnel shall determine if the bargaining unit member's absence will create a staffing shortage and will have the option to approve or disapprove this request.

7.5     Hours from the PBA time pool may be utilized by designated PBA representatives when they are required to represent bargaining unit members as part of grievance procedures, when they attend monthly PBA Board of Directors meetings, negotiation sessions and meetings, and other mutually agreed meetings, subject to available manpower and staffing needs. The parties agree to limit the number of bargaining unit members  attending  functions other than official negotiation sessions, as specified in Section 7.1 of this Agreement. The parties agree that the number of bargaining unit members attending official negotiation sessions while  on  duty  will be restricted to no more than four (4) representatives in an on-duty status. Bargaining unit members attending such functions will submit a pool time form to the Sheriff or his designee at least five (5)  days prior to the time the bargaining unit member is requesting to use the time pool. It is understood that, on rare occasions, the five (5) day time limit may not be met. Failure to file a completed pool time usage form five (5) days prior to the bargaining unit member's request for use of pool time may result in the bargaining unit member's not being paid for the time requested.

7.6     The PBA time pool will be used on an hour for hour basis, regardless of the hourly rate of the bargaining unit member using time from the time pool. In reporting a bargaining unit member's absence as a result of utilizing the time pool, the daily attendance record shall reflect:

"Deputy John Doe on PBA" (PBA Time Pool)

7.7   All applicable rules, regulations, and orders of the Sheriff's Policy and Procedures Manual shall apply to any bargaining unit member on pool time. Violations of the above-mentioned rules, regulations and orders shall subject the bargaining unit member on pool time to the regular disciplinary process currently provided for by the Broward Sheriff's Office.

## ARTICLE 8

### COMMUNICATIONS POLICY

8.1    The PBA President, or in his absence another member of the PBA, will be placed on the contact list maintained by BSO's Communications Division and will be notified in any situation in which a bargaining unit member is seriously injured, involved in a discharge of his/her firearm, or any other type of incident which requires the dispatching of the Internal Affairs Division as the result of a bargaining unit member's action, or when the Sheriff or his designee requests that the PBA be contacted.

8.2    Other than those situations in which the response of the PBA is specifically requested by the Sheriff, it shall be within the discretion of the PBA to determine whether an actual physical response is necessary.

8.3    In those cases in which a bargaining unit member requests a PBA representative to respond or to be contacted and the affected party is unable to make such notification, the Communications Division, upon request, will attempt such contact.

8.4    The PBA will provide the necessary information to facilitate compliance with this Article.

## ARTICLE 9

## <u>UNION DEDUCTIONS</u>

Union deductions shall be made in accordance with forms provided by the PBA and executed and authorized by the bargaining unit member authorizing said deductions. There shall be no charge made by the Sheriff for these deductions. The exact amount of monies to be deducted for each bargaining unit member shall be provided by the PBA to the Sheriff. Any changes in the amounts to be deducted shall be given to the Sheriff thirty (30) days in advance. These monies shall be transmitted to the PBA on a biweekly basis after the deductions are taken from biweekly payroll. The PBA shall indemnify the Sheriff and hold the Sheriff harmless against any and all suits, claims, demands, and liabilities which arise out of or by reason of any action taken by the Sheriff to comply or attempt to comply with the provisions of this Article.

This assignment, authorization and direction shall be revocable, at any time, upon thirty (30) days written notification by the bargaining unit member, to the Sheriff and the PBA.

# ARTICLE 10

## WORKWEEK AND EXEMPT EMPLOYEE PACKAGE

10.1   The basic workweek for bargaining unit members shall consist of forty (40) hours per week, unless otherwise specified or scheduled by the Sheriff or his designee.

10.2   The parties recognize that all Lieutenants are salaried bargaining unit members who perform supervisory functions and are exempt from overtime coverage of the Fair Labor Standards Act. Therefore, it is recognized that Lieutenants are not eligible to receive overtime compensation.

10.3   Bargaining unit members except for the Executive Officers, may utilize sixty-eight (68) hours of Administrative Leave per calendar year. Executive Officers may utilize seventy-six (76) hours of Administrative Leave per calendar year.  Bargaining unit members shall obtain supervisory approval prior to using administrative leave.  Bargaining unit members are not required to submit proof of hours worked as a prerequisite to use of administrative leave. Administrative leave time may not be accumulated.  Leave time must be used within the calendar year or it will be lost.

## ARTICLE 11

## LAY OFF/RECALL

The Sheriff retains the exclusive right to determine the need for personnel reduction.

11.1   For the purpose of this Article, bargaining unit members shall have two (2) types of seniority: Classification Seniority and Department Seniority. Classification Seniority is defined as the length of service in a specific job classification. Department Seniority is defined as the length of service with the Broward Sheriffs Office, measured from the bargaining unit member's initial date of hire.

11.2   In the event of personnel reduction, bargaining unit members shall be laid off in the inverse order of their seniority in their classification; provided, however, that where two (2) or more bargaining unit members have seniority standing within thirty (30) days of each other, the Sheriff shall determine the order of layoff, in his discretion, based, inter alia, on education and performance. However, if a layoff occurs, the bargaining unit member(s) shall have the right to revert to the next lowest rank for which they have adequate seniority, as defined herein. Upon reverting to a lower rank, a bargaining unit member's seniority shall be determined by the date of his/her original permanent appointment to that rank. All probationary bargaining unit members shall be reduced in rank before any non-probationary bargaining unit member is reduced in rank.

11.3   Bargaining unit members shall be recalled from layoff or reduction in rank pursuant to layoff in accordance with their seniority in the classification from which they were laid off.  Recalled bargaining unit members will retain and carry over with them all seniority previously accrued in the classification from which they were laid off.  No new bargaining unit member shall be hired or promoted until all non-probationary bargaining unit members on layoff status in that classification (i.e., on layoff and/or reverted in rank) have had an opportunity to return to their classification. The Sheriff reserves the right in his sole discretion to require that said recalled bargaining unit members submit to any such existing entry level test(s) (e.g., physical, psychological, polygraph, toxicology testing), in order to determine that they are physically and mentally capable of performing the work available at the time of recall. Further, all such recalled bargaining unit members must meet all of the established standards set by the Sheriff in effect at the time of the recall. When subject to recall to a Lieutenant position, bargaining unit members will be recalled before the position is filled by another classification.

11.4   The Sheriff may deviate from the above described procedure, for valid reasons which shall not be arbitrary or  capricious, in order to  maintain bargaining  unit members in special assignments/positions, to maintain (or recall)  personnel deemed necessary by the Sheriff and/or as necessary to comply with federal or state court orders, decrees, judgments, statutes, regulations, public safety purposes and/or requirements.

## ARTICLE 12

## <u>LEAVE OF ABSENCE WITHOUT PAY</u>

A bargaining unit member may be granted a leave of absence without pay with the prior approval of the Sheriff as provided for in the Family and Medical Leave Act (FMLA) and in accordance with the Sheriff's policies.

## ARTICLE 13

## EQUIPMENT

13.1   The Sheriff will provide uniforms consistent with the Sheriff's Policy and Procedures Manual.

13.2   In the event that personal property of a bargaining unit member is damaged, destroyed or lost as a result of performance of duty, the Sheriff agrees to repair or replace the item, up to a total of $200.00 per incident for all personal property, under the following conditions:

a)      The bargaining unit member is required, within twenty-four (24) hours of the incident, to submit a written memorandum including a police report and documentation of the loss; and

b)      The District Commander must review the bargaining unit member's memorandum and approve the request prior to disbursement; and

c)      The total compensation to a bargaining unit member is limited to $400.00 per calendar year.

d)      The following schedule shall apply:

Wrist watches - up to $50.00

Prescription eyeglasses, prescription sunglasses and prescription contact lenses - up to $100.00 (and only if not otherwise reimbursed through another source, such as workers' compensation coverage)

Clothing (excludes provided uniforms) up to $100.00.

13.3   The Sheriff will provide replacement of all leather goods/accessories required for a bargaining unit member's use, and the bargaining unit member shall present any leather accessories to the District Commander for inspection and approval prior to receiving a replacement. All damaged leather goods shall be returned to the Sheriff prior to giving the bargaining unit member a replacement.

13.4   Bargaining unit members will be issued a rechargeable flashlight at time of hire. Damaged flashlights or replacement parts due to normal wear will be the responsibility of BSO.

13.5   Bargaining unit members, while on duty in uniform, will be required to wear one of the following types of footwear:

a) Oxford or ankle boot with corfam upper, black in color
b) Oxford or ankle boot with leather upper, black in color
c) Combat/jump boot, leather upper, totally black in color, to include boots that are partly made of fabric and partly made of leather. All boots will be the lace up type.

13.6   Bargaining unit members covered by this Agreement will be provided, at five year increments, a longevity service bar to be worn on the uniform in conformance with the Sheriff's Policy and Procedures Manual. Said service bar will be supplied at no cost to the bargaining unit member.

# ARTICLE 14

## <u>UNIFORMS</u>

The Sheriff agrees to appoint one (1) bargaining unit member to serve as a representative on the uniform committee. The PBA may submit recommendations for the improvements of uniforms and other equipment. The Sheriff's decision on uniforms shall be final.

## ARTICLE 15

## RETIREMENT BENEFITS

15.1    **Florida Retirement System (FRS)** – The definition of normal retirement as defined by FRS applies to employees in both the Pension Plan and the Investment Plan.  The definition and requirements will apply for retirement insurance discount eligibility determination.

**Contract City Pension** – Those bargaining unit members retiring from a contract city pension plan must meet the definition and eligibility requirements of the applicable contract city pension plan's regular retirement for retirement insurance discount eligiblility determination.

Each bargaining unit member who normally retires on length of service or medical disability shall receive his/her issued badge (suitable ID case), and identification card clearly marked "retired," including those bargaining unit members who are employed by the Sheriff's Office and are governed by a contract city pension plan.

Bargaining unit members leaving in good standing who have at least twenty-five (25) years of combined service to include BSO and contract city time, shall receive his/her issued badge (suitable ID case) and identification card clearly marked "retired".

15.2    Bargaining unit members hired prior to October 1, 2007 will be grandfathered to continue eligibility for the two percent (2%) retirement discount program.  Bargaining unit members hired on or after October 1, 2007, will not be eligible for the two percent (2%) retirement discount program.  Each bargaining unit member who qualifies for normal retirement under the Florida Retirement System (FRS) shall receive a post retirement health insurance benefit equal to active duty members. Under said plan, the retiring member who is qualified to retire under FRS will receive two percent ( 2%) credit for each year of creditable service pro-rated by each full month of service with BSO to a maximum of fifty percent (50%) of the total health insurance premium cost.

15.3    Bargaining unit members transitioned to BSO prior to October 1, 2007 will be grandfathered to continue eligibility for the two percent (2%) retirement discount program.  Bargaining unit members transitioned to BSO on or after October 1, 2007, will not be eligible for the two percent (2%) retirement discount program.

Those bargaining unit members who retire from a contract city pension plan, and are employees of the Broward Sheriff's Office, are eligible to remain in the Broward Sheriff's Office health care plan. Under said plan, the retiring member who is qualified to retire will receive two percent (2%) for each year of creditable service pro-rated by each full month of service with BSO to a maximum of fifty percent (50%) of the total health insurance premium cost.

15.4    Retiring bargaining unit members who meet the requirements outlined in Section 15.1 and who do not wish to continue to participate in the BSO Group health plan at time of retirement from BSO may elect to receive a monthly stipend equal to the premium amount paid by the Sheriff utilizing the HMO premium rate at the time of separation/retirement with the employees percentage discount applied as outlined in section 15.2. and 15.3.  The level of coverage, HMO single or HMO family will be determined by the single or family coverage

level maintained for the 24 months directly preceding retirement. If the employee's level of coverage changed over the previous 24 months from the time of retirement from BSO, the employee will only be eligible to receive a stipend equal to the amount paid by the Sheriff as defined in the applicable rates schedule utlizing the HMO single level of coverage

Employees who elected to continue coverage in the BSO Group Health Insurance may at a later date cancel the coverage and elect to receive a monthly stipend equal to the stipend available at the time of separation/retirement. Employees are only eligible to elect the monthly stipend upon cancellation of their active participation in the BSO Group Health Insurance Plan.

- The employee must send written notification to BSO 30 days prior to the date they wish to terminate the coverage
- Termination of coverage must be the end of the month
- Employees will have 30 days from the last day of coverage to rescind their cancellation and maintain health insurance through the Broward Sheriff's Office
- Once cancellation of health coverage takes effect, the retiree will begin receiving monthly stipend payments based on the amount equal to the stipend available at the time of separation/retirement

Employees electing the monthly stipend may not re-enroll in the BSO Group Health Insurance at a future date.

Stipend shall cease the immediate month following the member reaching Medicare eligibility. Bargaining unit members retiring who no longer wish to participate in the health plan will not be eligible to re-enter the BSO health plan at any time in the future.

## ARTICLE 16

### AMERICANS WITH DISABILITIES ACT

16.1    BSO may be required to take certain actions to comply with the Americans with Disabilities Act ("ADA"). These actions may be required to be maintained as confidential under the ADA, yet impact upon bargaining unit members covered by this Agreement. Accordingly, BSO is permitted to take such action(s) in compliance with the ADA requirements without disclosure to the PBA or any affected bargaining unit member. In that event, no action taken by BSO, in compliance with ADA, is subject to the grievance procedure herein.

16.2    The PBA may ask bargaining unit members to execute written waivers of the confidentiality requirements of the ADA and provide a copy of those waivers to BSO. With respect to any such waiver, the provisions of this Article regarding access to the grievance procedure shall not apply.

16.3    The parties agree to be bound by any subsequent federal regulations or interpretive guidelines as to the application of the ADA which apply in the context of collective bargaining.

## ARTICLE 17

## SALARY

Salary schedules for bargaining unit members are hereby established contingent upon funding by the Broward County Board of Commissioners. All salary changes take effect the first full pay period after the recited date in the following sections. To the extent that any wages or other benefits in this agreement may be applied retroactively, such wages and benefits will apply only to those bargaining unit members actually employed by the Sheriff at the time of the ratification of this agreement.

### Salary Range Adjustments

17.1   Effective Fiscal Year 2010/2011 (October 1, 2010 thru September 30, 2011), there will be no salary range adjustments.

17.2   There will be a re-opener for Fiscal Year 2011/2012 (October 1, 2011 thru September 30, 2012).

### Step Plan

17.3   In accordance with the Appendix B, bargaining unit members not at the maximum rate of the pay range shall advance one step in the pay plan on the member's anniversary date through September 30, 2010.  For Fiscal Year 2010/2011, (October 1, 2010 thru September 30, 2011) all steps will be frozen.

17.4   The step plan previously frozen will be reinstated for Fiscal Year 2011/2012 and bargaining unit members will advance to the next step.

17.5   With respect to Fiscal Years 2010/2011, 2011/2012, if any other bargaining unit accepts a salary range adjustment or is permitted to advance in a step plan to include longevity steps, with the exception of any increases received pursuant to imposition by a legislative body, the members of this bargaining unit will receive the same salary range adjustment or advancement in the step plan.

### Longevity Step Plan

17.6   Bargaining unit members after having served one (1) year in step 9 and having completed twelve (12) years of continuous service from their date of hire, shall be entitled to move from step 9 to step 10 on the first full pay period following the bargaining unit members anniversary date through September 30, 2010.  Bargaining unit members after having served one (1) year in step 10 and having completed  eighteen (18) years of continuous service from their hire date, shall be entitled to move from step 10 to step 11 on the first full pay period following the bargaining unit members anniversary date through September 30, 2010.

Bargaining unit members after having served one (1) year in step 11 and having completed twenty (20) years of continuous service from their hire date, shall be entitled to move from step 11 to step 12 on the first full pay period following the bargaining unit members anniversary date through September 30, 2010.

17.7   For Fiscal 2010/2011 (October 1, 2010 thru September 30, 2011) all longevity steps will be frozen.

17.8   The longevity step plan previously frozen will be reinstated for Fiscal Year  2011/2012.

17.9   With respect to Fiscal Years 2010/2011, 2011/2012, if any other bargaining unit accepts a salary range adjustment or is permitted to advance in a step plan to include longevity steps, with the exception of any increases pursuant to imposition by a legislative body, the members of this bargaining unit will receive the same salary range adjustment or advancement in the step plan.

## ARTICLE 18

## SPECIAL BENEFITS

18.1    The Sheriff shall provide and pay full premiums for a twenty-five thousand dollar ($25,000) group term life insurance policy with a double indemnity clause for accidental death for those bargaining unit members covered by this Agreement who are temporarily or permanently assigned to the helicopter or fixed wing section.

18.2    All bargaining unit members shall be issued a take home vehicle or receive a monthly salary supplement of  four hundred fifty three dollars and forty five cents ($453.45) per month at the Sheriff's option. Bargaining unit members who lease or purchase a vehicle in response to receiving the salary supplement  will  be  permitted  to  continue  receiving  the  supplement through the period of the loan or lease, but only  during  such  time  as  said  bargaining  unit member(s) remain employed with BSO with rank of Lieutenant.

Bargaining unit members who are eligible for take home vehicles will be given the choice of a marked or unmarked take home vehicle.  The Sheriff retains the right to determine who will be given a take home vehicle or the vehicle supplement as set forth in this Article.

18.3    Bargaining unit members regularly assigned to SWAT (including Hostage Negotiators) will receive a one hundred fifty dollar ($150.00) bi-weekly supplement in addition to  their base salary. The supplement payment shall be non-cumulative and will not be included in base salary for any purpose.

18.4    The Sheriff shall provide a clothing allowance of three hundred seventy five ($375.00) dollars per year for executive officers and for bargaining unit members working full-time in the following assignments: Investigators assigned to Criminal  Investigations, Strategic Investigations Division (SID), Child Protective Investigation Services (CPIS), Training and County Wide Operations.

Eligibility for clothing allowance shall be determined as of January 1 for service performed in the above specified assignments for the preceding year, and will be paid by January 30 to active bargaining unit members on a pro-rata basis computed monthly for determination of eligibility and payment.

18.5    Bargaining unit members who are regularly assigned as Executive Officers shall receive a bi-weekly supplement of three percent (3%) of his/her current base rate of pay during such period of assignment.  The salary supplement shall be non-cumulative and not included in base salary.

18.6    Bargaining unit members regularly assigned to Crime Scene, Criminal Investigations, Child Protective Investigation Services (CPIS), Strategic Investigations Division (SID), Training, and Countywide Operations will receive a seventy-five ($75.00) dollar bi-weekly supplement to his/her base salary.  The supplemental payment shall be non-cumulative and not included in base salary.

18.7   The bargaining unit member can receive no more than one supplemental pay from Sections 18.3, 18.5 or 18.6 regardless of the number of concurrent special assignments. The bargaining unit member may choose the one supplemental pay he/she is to receive.

18.8   Bargaining unit members regularly assigned to uniformed road patrol and who physically work 50% or more of the alpha shift on a regular basis, and are not assigned to a specialty unit shall receive a bi-weekly supplement for hazardous duty pay in the amount of eighty dollars ($80.00) in addition to their base salary. The supplement payment shall be non-cumulative and not included in base salary.

18.9   **Critical Incident Pay**

In the event a bargaining unit member covered under this agreement is required to work outside their normal work schedule to staff an incident declared as a state of emergency by the Governor or the President and reimbursable by FEMA or other federal agency or at the sole discretion of the Sheriff, such bargaining unit member will be eligible to receive an hourly supplemental ("critical incident") payment equal to step 5 at the time of the incident, within the Lieutenant pay range computed at time and one-half per hour for hours worked. Partial hours will be rounded to the nearest quarter hour.

The parties agree and acknowledge that Lieutenants covered under this agreement are salaried employees exempt from overtime compensation under the provisions of this Agreement and the Fair Labor Standards Act (FLSA) and that eligibility for receipt of supplemental ("critical incident") pay does not in any manner alter their exempt status.

## ARTICLE 19

### **ADVANCE VACATION PAY PROVISIONS**

A bargaining unit member may request payment for his/her vacation or holiday leave in advance of his/her scheduled leave by submitting a request in writing (including approved leave slip) to the Finance Department, Payroll Division at least three (3) weeks prior to starting leave. This provision shall be limited to bargaining unit members on leave in excess of ten (10) working days.

Subject to funding and at the sole discretion of the Sheriff, bargaining unit members may elect to receive payment for up to forty (40) hours of annual leave at their current rate of base salary as reflected in the current salary schedule. Should an annual leave payout be approved, such elections must be received in writing by the Human Resources Director no later than September 1 during the term of contract (October 1, 2010 through September 30, 2012). Requests received after the September 1 deadline will not be granted.

In the event that other select exempt employees are offered and accept an annual leave payout as described herein for Fiscal Years 2010/2011, 2011/2012 with the exception of any annual leave payouts received pursuant to their imposition by a legislative body, the annual leave payout will be processed for election requests within this bargaining unit.

## ARTICLE 20

## <u>BEREAVEMENT LEAVE</u>

During the term of this Agreement, a full time bargaining unit member shall be granted three (3) days of bereavement leave at his/her regular rate of pay in the event of death of the bargaining unit member's mother, father, step-mother, step-father, step child, brother, sister, son, daughter, grandchild, spouse, County registered domestic partner, mother-in-law, father-in-law,mother or father of County registered domestic partner and the bargaining unit member's natural grandparents. However, in the event the funeral occurs outside the State of Florida, a bargaining unit member shall be granted five (5) days of funeral/bereavement leave at his/her current rate of pay to attend the funeral and burial. The bargaining unit member shall obtain supervisor approval prior to using bereavement leave. The Sheriff reserves the right to require documentation supporting bereavement leave upon the bargaining unit member's return to work.

# ARTICLE 21

## TEMPORARY REASSIGNMENT DUE TO INJURY OR ILLNESS

21.1   A bargaining unit member may be allowed to return to work on light duty status upon the recommendation of his/her physician. The recommendation should be made only if there is a reasonable expectation that the bargaining unit member can return to work within sixty (60) working days and maintain current pay grade. Only two (2) light duty positions will be available to lieutenants in the Department of Law Enforcement. These positions will be utilized on a first come basis. The Sheriff in his sole and exclusive discretion may increase the number of light duty positions. The Sheriff or his designee has sole discretion to approve light duty status. A bargaining unit member who refuses a light duty assignment will forfeit any sick leave or disability benefit to which he/she would otherwise be entitled.

21.2   If a bargaining unit member is on light duty status he/she may not be allowed to drive a marked BSO Unit.  If available, an unmarked take home unit will be made available to any bargaining unit member whose injury does not prevent him/her from driving. If a bargaining unit member does not have an assigned take home vehicle for more than three (3) consecutive days that bargaining unit member will receive the supplement, pro-rated daily, as outlined in 18.2  unless the bargaining unit members injury prevents him/her from driving.

## ARTICLE 22

### <u>OUT OF CLASSIFICATION PAY</u>

The Sheriff may, at his discretion, assign a bargaining unit member covered by this Agreement to serve as temporary replacement for an absent superior. If a bargaining unit member serves as temporary replacement for an absent superior for a period in excess of forty (40) hours per calendar year, the bargaining unit member shall be paid five (5%) percent above his/her current straight time rate of pay for all work performed in the temporary position thereafter during that calendar year. Bargaining unit members assigned as Executive Officers are exempt from this Article. Bargaining unit members who are not assigned as Executive Officers are eligible for Out of Classification Pay.

## ARTICLE 23

## <u>TRAINING AND TUITION</u>

23.1    The training and tuition policy will continue as it is currently administered, as described in Sections 23.2 through 23.5 of this Agreement.

23.2    The Sheriff will pay the following incentive pay for law enforcement related education as defined by the State of Florida Criminal Justice Standards and Training Commission to all eligible bargaining unit members covered by this Agreement pursuant to Florida Statutes.

      A. Completed Associate's Degree or equivalent .................. $30.00 per month
      B. Completed Bachelor's Degree (Four years of college) .... $80.00 per month
      C. Completed Master's Degree ........................................... $50.00 per month

23.3    Attendance at training related to a bargaining unit member's duties as a law enforcement officer, approved by the chain of command and training, shall be attended in an on-duty status. However, this provision does not apply to career development (incentive) courses, unless specifically approved by the chain of command.

23.4    Payment for attendance at approved career development training courses shall continue as prescribed by Section 943.22, Florida Statutes.

# ARTICLE 24

## TRANSFERS

24.1   It shall be the sole right of the Sheriff to transfer bargaining unit members. If a transfer is a permanent change in the bargaining unit member's assignment, shift, or days off (except in the Departments or assignments excepted herein), if possible, under the circumstances as determined by the Sheriff, five (5) working days' notice will be provided prior to the transfer. Upon mutual agreement, however, by both parties, this provision may be waived. Bargaining unit members attending in-service training are exempt from this provision.

24.2   Twice a year (January and July), bargaining unit members may submit a memo indicating their preference in choice of assignment. When a vacancy occurs in a position which will be filled by a member of the bargaining unit, the preference lists will be considered when filling the position. The final choice in filling any such vacant position remains solely within the Sheriffs discretion.

24.3   Bargaining unit members who are involuntarily transferred to another district, division, or unit will maintain and carry any scheduled/approved annual, holiday or sick time and reasonable efforts will be made to permit use of said time as previously approved and scheduled.

24.4   This Article shall not apply to changes in assignments, shift or days off in the following departments: CI, Regional Narcotics, Street Narcotics and Vice, Technical Services, SET Teams (in all Districts) and other special units and/or special assignments with twenty-four (24) hour responsibilities or those in units where routine work requires frequent changing of work hours. It is agreed that the Sheriff has the authority to change the shifts and days off of the above listed assignments, in order to provide the highest level of protection to the citizens of Broward County.

24.5   Request for transfer to another location shall automatically expire if not granted or denied within ninety (90) days of submission.

# ARTICLE 25

## PERSONNEL RECORDS

25.1    Each bargaining unit member covered by this Agreement, or legal representative so designated in writing by the bargaining unit member, shall have the right to inspect his/her official personnel file.  Such inspection shall take place at reasonable times and at the location where the official personnel file is kept.  Each bargaining unit member shall have the right to receive a duplicate copy of any item contained in his/her official file, at a reasonable cost of reproduction.

25.2    Inspection of personnel files will be limited in accordance with Florida law.

# ARTICLE 26

## DISCHARGE AND DISCIPLINE

26.1    The procedure for investigation of any bargaining unit member covered under this Agreement, which could lead to disciplinary action, demotion, or dismissal, shall be as outlined in the Sheriff's Policy and Procedures Manual, as determined by the Sheriff, and the Florida Law Enforcement Officers Bill of Rights (Florida Statutes, 112.531, et seq).

26.2    Counseling, in either verbal or written format, shall not itself constitute discipline pursuant to the Sheriff's policies and procedures, but may be considered by the Sheriff in cases where discipline is imposed for other reasons and may be utilized by the Internal Affairs Division in the course of its investigations.

## ARTICLE 27

### GRIEVANCE PROCEDURE

27.1    The parties hereto agree that they will promptly attempt to adjust all complaints, disputes, controversies or other grievances arising between them involving questions of interpretation or application of the terms and provisions of this Agreement as provided herein.

27.2    A grievance shall be defined as any controversy or dispute arising between the parties involving questions of interpretation or application of the terms and provisions of this Agreement.

However, disciplinary actions of a suspension of five (5) days or less or a written reprimand shall be entitled only to review by the Administrative Appeal Board (hereinafter, "AAB") and will not be subject to the provisions herein for grievance arbitration.

27.3    Appeals to the AAB shall be submitted within ten (10) working days of the bargaining unit member's receipt of the final discipline (approved by the Department Head) by submitting the request to the Sheriff or his designee.  The decision of the AAB shall be final and binding on both parties.

27.4    **AAB Structure**:

1.  A. The AAB will consist of three (3) BSO employees. Two (2) BSO employees will be selected from the PBA list of candidates.  Candidates for the list will be selected as follows:

    1.  Bargaining unit members, via their union representatives, will submit thirty (30) employee candidates to the Sheriff.

    2.  The thirty (30) candidates will consist of thirty (30) bargaining unit members from the Department of Law Enforcement within the Bargaining Units representing deputies/sergeants and lieutenants.

    3.  The Sheriff or his designee will select fifteen (15) candidates from the list provided. These selected candidates will be eligible to randomly serve on the AAB for a twelve (12) month period.

    4.  The Sheriff reserves the right to reject any submitted list of candidates without explanation and to request the submission of a revised list of candidates.

    5.  The third employee on each AAB will be selected by the Sheriff in his sole discretion. This candidate will be selected from within the Bargaining Units representing deputies/sergeants and lieutenants.

B.    The AAB will meet periodically at a predetermined date and time to hear bargaining unit member appeals.

C.    The AAB members will alternate each month.

D.   The AAB members will consist of three (3) members from the Department of Law Enforcement to be selected as described in Section 27.4 A. (1-5) above.

E.   All three (3) members must be present for the AAB to convene.

F.   The Assistant Inspector General or his/her designee will assist the AAB with procedural questions in rating upon questions or issues during the hearing process. After questions have been answered and the hearing concluded, only members of the AAB shall remain in the hearing room to consider the merits of the appeal and render findings.

**27.5 <u>Hearing Process</u>**:

A.   Attendance by the bargaining unit member at the AAB hearing is not required. Therefore, any request for a continuance by the bargaining unit member should only be granted upon exceptional circumstances.

B.   The AAB will hear and determine:

1.   Bargaining unit member requested cases involving a five (5) day suspension or less.
2.   Appeals based on previously filed written documents. No oral presentation may be made without supporting written documentation.

27.6 Bargaining unit members may appear before the AAB to provide a verbal statement restricted to their written appeal and amendments thereto and any documents attached for consideration by the AAB. Statements will be limited to those issues generally outlined in the written appeal and any amendments thereto and any documents attached for consideration by the AAB. If the bargaining unit member chooses to appear, a representative of BSO will be permitted to appear before the AAB for the same purpose.

27.7 The Assistant Inspector General or his/her designee will ensure that the bargaining unit member will be provided with copies of all documentation submitted to the AAB for its review including, but not limited to, any BSO responses to the bargaining unit member's written appeal and any amendments thereto, no later than five (5) working days prior to the scheduled hearing.

27.8 The AAB, upon its review of the case and all written materials, will make one of the following findings:

1.   Sustained
2.   Not Sustained

After sustaining any violation, the AAB will:

a)   Consider the recommended discipline, and take appropriate measures, including decreasing or increasing discipline.

b)   Review the bargaining unit member's prior disciplinary history and records prior to decision.

c)   Not increase discipline to exceed "its" jurisdiction.

d) A written explanation shall be provided by each AAB member, whenever the AAB does not sustain a charge, or increases or decreases the discipline.

e) The decision of the AAB will be binding on all parties, and no further appeal or grievance is permitted.

27.9 Disciplinary suspension of six (6) days or longer, demotion or termination shall be processed through the Professional Standards Committee and ultimately, if not resolved to the bargaining unit member's satisfaction, to Step Three as set forth below (arbitration).

27.10 Should differences or disputes arise concerning the terms and conditions of this Agreement between the parties to this Agreement or between the bargaining unit members covered herein and the Sheriff, the aggrieved party to this Agreement or any bargaining unit member(s) shall be required to use the following procedures except for disciplinary matters which are governed by separate policy and procedures.

**Step 1**

When a basis for a grievance arises, the PBA representative, on behalf of the bargaining unit member(s), shall present a written grievance specifying the nature of the grievance and the contract provision(s) allegedly violated to the bargaining unit member's Department Head, or his/her designee, within seven (7) calendar days of the date on which the bargaining unit member(s) or the PBA knew or could have reasonably known of the occurrence of the event allegedly giving rise to the grievance. Upon presentation of this written grievance to the Department Head, or his/her designee, the bargaining unit member and the PBA shall attempt to resolve the same dispute and, within seven (7) calendar days thereafter, the Department Head or his/her designee shall render a written decision to both the bargaining unit member and to the PBA. If no decision is rendered within the time period, the grievance shall automatically advance to the next step.

**Step 2**

In the event the bargaining unit member is not satisfied with the written answer to Step 1 above, the grievance shall be presented within five (5) working days after the written answer above to the Sheriff, or his designee, who shall, within ten (10) working days of the receipt of same, render a decision in writing. If no decision is rendered within this time period, the grievance shall automatically advance to the next step.

**Step 3**

In the event a grievance processed through the grievance procedure set forth above has not been resolved, either party may file within fifteen (15) calendar days after the Sheriff, or his designee, renders a written decision on the grievance, a demand for arbitration upon the sheriff or his designee and a request to the Federal Mediation and Conciliation Services (FMCS) to furnish a panel of eleven (11) names from which each party alternates striking a name until the eleventh (11th) is left which will give a neutral or impartial arbitrator.

a) BSO and the bargaining unit member (or the PBA) shall mutually agree in writing as to the statement of the grievance to be arbitrated prior to the arbitration hearing, and the arbitrator therefore, shall confine his decision to the particular

grievance thus specified. In the event the parties fail to agree on the statement of the grievance to be submitted to the arbitrator, the arbitrator will confine his consideration and determination to the written statement of the grievance presented in Step 2 of the grievance procedure as well as BSO's response to same.

b)    The decision of said arbitrator shall be final and binding upon both parties. The arbitrator shall not be empowered to alter, amend, add to, or eliminate any provisions of this Collective Bargaining Agreement. Expenses incident to the services of the arbitrator shall be borne equally by both parties.

27.11   Application to this procedure shall foreclose and preclude the grievant from appealing to any other available procedure; including any administrative, internal, legal or equitable procedures, if any. Nothing in this Article shall require the PBA to process grievances for employees who are not members of the PBA, in conformity with Florida law. Bargaining unit members or the PBA having selected the procedure contained herein to process a grievance shall be estopped from and waive the right to use any other available procedure for processing grievances or claims.

27.12   The time limits provided in this Article shall be strictly observed, and may be extended only by written mutual agreement of the parties. On a case-by-case basis, the parties may mutually agree to bypass any step or steps in the grievance procedure.

## ARTICLE 28

## <u>DRUG AND ALCOHOL TESTING</u>

Bargaining unit members are subject to BSO's substance abuse policy as detailed in the Sheriff's Policy and Procedures Manual. The Policy is available to all current employees electronically on the BSO Informant.

## ARTICLE 29

## INSURANCE

29.1  **Health and Dental Insurance**

Upon ratification of this Agreement, health and dental insurance will be provided to bargaining unit members pursuant to the terms announced in the published rate and benefits schedule as described in Appendix "A" set for Calendar Year 2011. Said terms will be effective for the coverage period ending December 31, 2011. Any subsequent adjustments to premiums, co-pays, deductibles, services, benefits, and providers for Calendar Year 2012 will be negotiated through a contract reopener for year two (2) of this Agreement. The parties agree to participate in informational meetings held by management and its insurance consultant throughout the respective years in order to be informed regarding health and dental insurance benefits.

29.2  Should BSO offer another health or dental insurance benefits to other bargaining units or change benefits programs, then said benefits shall be offered to the bargaining unit members covered by this agreement under the same terms and conditions of other employees.

29.3  **Life Insurance**

Life insurance coverage for bargaining unit members will be provided in an amount equal to one year base salary, and the cost shall be paid by BSO for the term of this agreement.

Each bargaining unit member who qualifies for retirement under the Florida Retirement System (FRS) or from a contract city pension plan, is eligible to continue a $24,000.00 life insurance policy under the group rates at the retiree's expense.

29.4  Bargaining unit members are entitled to all supplemental insurance enjoyed by employees eligible for the Employee Exempt Package.

# ARTICLE 30

## VACATION & HOLIDAYS

30.1 During the term of this Agreement the following vacation periods shall be granted for bargaining unit members, for the amount of time of continuous service with the Sheriff including any Contract City time, as follows:

| Years of Work Completed | Number of Days Accrued |
|---|---|
| One (1) to Three (3) Years | Ten (10) days |
| Four (4) to Ten (10) Years | Fifteen (15) days |
| Eleven (11) Years and above | Twenty-One (21) days |

30.2

A.    Seniority, as used herein, is defined as the right accruing to bargaining unit members through continuous time in grade and classification, while employed by either BSO or a contract city, which entitles them to certain considerations and preferences as provided for in this Agreement with the exception of approved leaves of absences as provided in the Sheriff's Policy and Procedures Manual.

If two (2) or more bargaining unit members have the same classification date, for the purpose of breaking the tie, seniority will be determined by the bargaining unit members "CCN"number.  The lowest number constitutes the senior bargaining unit member.

B.    Seniority shall be one of the factors to be considered (along with others factors), in the sole discretion of the Sheriff, when bargaining unit member(s) request annual leave and holidays off, when conditions in a classification within the assigned work unit permit.

C.    Selection of annual leave and holidays will be held once a year.  The selection process will take place the first week of February.  Selections will be for the time frame of 3/1-2/28.  The Sheriff or his designee will determine the amount of available vacation slots. The bargaining unit members will have a reasonable time to select his/her vacation slot (up to four (4) consecutive weeks) by seniority.  Each employee will be allowed to select his/her first pick and once all bargaining unit members have selected his/her first pick then a bargaining unit member will (by seniority) select their second pick.

D.    The Captain and the Executive Officer will not select vacation slots occurring or overlapping at the same time.  The Captain will have first selection rights.  The Executive Officer will then have a reasonable time to pick his/her vacation time.

E.    If a bargaining unit  member voluntarily changes his/her shift and/or assignment, BSO has the right to disapprove the members vacation pick.  If a bargaining unit member's shift is changed involuntarily then the original vacation selection will be adhered to.

F.    All other annual leave requests (individual requests) shall be approved/disapproved within five (5) calendar days of the request.  Such requests must be made within thirty (30) days prior to the requested time off.  Once the request is approved BSO may not thereafter disapprove it unless an emergency or critical situation exists, as determined by the Sheriff or his designee.

30.3    Any bargaining unit member who has sustained an injury in the line of duty and who has vacation time previously scheduled which falls within the period of disability shall be entitled to reschedule the vacation time after return to duty. It is the intent of the parties that any previously scheduled vacation time falling within a period of disability incurred in the line of duty shall not be forfeited or otherwise expended due to the unforeseeable circumstance of the injury.

30.4    During the term of this Agreement, the Sheriff recognizes the following eleven (11) paid holidays:

NEW YEAR'S DAY
MARTIN LUTHER KING JR. DAY
PRESIDENTS' DAY
MEMORIAL DAY
INDEPENDENCE DAY
LABOR DAY
VETERANS' DAY
THANKSGIVING DAY
FRIDAY AFTER THANKSGIVING DAY
CHRISTMAS DAY

ONE (1) FLOATING HOLIDAY ( Bargaining unit members must be employed by January 1 to be eligible for the floating holiday.)

30.5    Holiday leave and holiday pay shall be governed by Sheriff's Policies and Procedures Manual.

30.6

A.  Bargaining unit members assigned to oversee the supervision of uniform road patrol:

- Who are regularly scheduled to work on a holiday shall have the discretion to work the holiday;

- Who work the holiday shall be paid at the bargaining unit member's straight time rate of pay for all hours worked on the holiday, plus either eight (8) hours of holiday pay at the straight time rate of pay or at the bargaining unit member's option, eight (8) hours accrued of holiday time.

B.  Bargaining unit members not assigned to oversee the supervision of uniform road patrol:

- Reporting to work on the following holidays will be non-discretionary in nature by the bargaining unit member.  The Sheriff, or designee, shall have the sole discretion to determine if a bargaining unit member, referred to in this paragraph, is required to report to work on the following holidays which falls on the bargaining unit members regularly scheduled work day:

1.  Thanksgiving Day
2.  Day after Thanksgiving
3.  Christmas
4.  New Years Day
5.  Fourth of July

- All other holidays may be worked or taken off, at the discretion of the bargaining unit member, if the scheduled holiday falls on the bargaining unit member's regularly scheduled work day.  While every effort will be made to accommodate requests for time off on the holiday, all requests are subject to adequate staffing.

- Who work the holiday shall be paid at the bargaining unit member's straight time rate of pay for all hours worked on the holiday, plus either eight (8) hours of holiday pay at the straight time rate of pay or at the bargaining unit member's option, eight (8) hours accrued of holiday time.

30.7   Every effort will be made for each bargaining unit member to be scheduled to be off on at least one (1) of the holidays between (and including) Thanksgiving and New Year's Day.

30.8

A. Bargaining unit members shall have an annual accrual cap of a cumulative total of four hundred  (400) hours of holiday and vacation time or the bargaining unit members grandfather cap at the end of each calendar year. All accrued time in excess of four hundred (400) hours or the "grand-fathered" cap will be lost by the bargaining unit member if not used   within   the calendar year.   A bargaining unit member who has made reasonable attempts to use excess accruals and has been denied said requests shall submit written notification to the Human Resources Director via chain of command for authorization to carry excess accruals into the next calendar year.

B. **EXCEPTION: GRANDFATHER CLAUSE**

Bargaining unit members having accrued annual and holiday leave hours in excess of three hundred twenty (320) hours as of pay date March 10, 1995 shall be entitled to a "grand-fathered" cap of their accrued time as of that date.

**EXAMPLE**:

A bargaining unit member has four hundred (400) hours of annual leave and eighty (80) hours of holiday leave on the accrual report for pay date March 10, 1995. This is over the 320 hours cap maximum. This bargaining unit member would be grand-fathered in at four hundred eighty (480) hours. Before December 31 of each calendar year, the bargaining unit member will need to use any excess time over four hundred eighty (480) hours or forfeit the time.

This "grand-fathered" cap remains effective for each successive calendar year unless the bargaining unit member uses an amount of annual and/or holiday leave so as to reduce total accrued time below the cap as of December 31 of each calendar year. This new, lower balance of accrued time becomes the bargaining unit membees new grand-fathered cap.

**EXAMPLE:**

A bargaining unit member has a grand-fathered cap of four hundred eighty (480) hours, but at the end of the calendar year (December 31), the bargaining unit member's cumulative annual and holiday leave total is four hundred and ten (410) hours. The bargaining unit member's new grand-fathered cap is four hundred and ten ( 410) hours.

## C. **DROP/Retirement Exception**

Those bargaining unit members who are within one (1) year of retirement/participation in the DROP may carry over up to one (1) year of accruals of annual leave and exceed the four hundred (400) hour cap or the bargaining unit member's grandfathered cap up to a maximum of five hundred (500) hours of annual and holiday leave.  A bargaining unit member must sign an irrevocable request at the time of his/her decision.

## 30.9   **Personal Day**

Bargaining unit members covered by this Agreement will be allotted, at the end of the first full pay period in January, on an annual basis, one (1) personal day to be utilized at the discretion of the bargaining unit member, with prior approval from his/her immediate supervisor. The personal day must be utilized by December 31st of each year and cannot be accumulated for any reason.

30.10   In the event that another bargaining unit is offered and accepts an increase in annual or holiday leave hours for Fiscal Years 2010/2011, 2011/2012 with the exception of any increases received pursuant to their imposition by a legislative body, the annual or holiday leave hours will be increased for this bargaining unit.

# ARTICLE 31

## **MILITARY LEAVE**

The Sheriff will apply the Military Leave Policy as stated in the Sheriff's Policy and Procedures Manual, State and Federal law.

# ARTICLE 32

## SICK LEAVE

**Sick Time Payout**

Years of service for this section shall be determined by hire date combining all BSO time, any Contract City time, and any time on the DROP Plan.

a. Good standing,  for this section, shall be determined as a bargaining unit member resigning or retiring without charges pending.  If a bargaining unit member has been notified that charges are pending against him/her then said bargaining unit member must give a minimum of sixty (60) days notice of his/her resignation or retirement date. If the bargaining unit member is terminated prior to his/her resignation or retirement date, the bargaining unit member will not be considered leaving in good standing.

b. Any bargaining unit member who is within sixty (60) days of his/her DROP date and has been notified that charges are pending against him/her that, if sustained, would likely result in termination as decided at the sole discretion of the Sheriff or his designee, will not be considered leaving in good standing.  If the charges are subsequently not sustained by the Professional Standards Committee (PSC), the records will be amended to reflect that the bargaining unit member left in good standing and the bargaining unit member will be entitled to his/her sick leave payout to be paid within thirty (30) days at the employee's rate of pay at the time of separation.  If the charges are subsequently sustained by the PSC, the PSC will then make a determination as to the level of discipline that would have been recommended had the employee still been employed with BSO.  If the recommendation is anything less than termination, the records will be amended to reflect that the bargaining unit member left in good standing and the bargaining unit member will be entitled to his/her sick leave payout to be paid within thirty (30) days at the employee's rate of pay at the time of separation.  If the recommendation is for termination, the bargaining unit member will not be considered leaving in good standing.

## Zero (0) to Ten (10) Years of Service

Bargaining unit members who have less than ten (10) years of service, will not receive any sick leave compensation upon separation from the agency.

## Ten (10) to Fifteen (15) Years of Service

Bargaining unit members who have at least ten (10) years of service, but less than fifteen (15) years, will not receive any sick leave compensation upon separation from the agency for any reason other than normal retirement (defined by FRS or contract city) or the death of the bargaining unit member.

Bargaining unit members leaving in good standing who have at least ten (10) years of service but less than fifteen (15) years, upon normal retirement (defined by FRS or contract city) or death, will receive, upon separation fifty (50%) percent of his/her unused accumulated sick leave up to a maximum of four hundred eighty (480) hours computed at the bargaining unit members current rate of pay.

## Fifteen (15) to Twenty (20) Years of Service

Bargaining unit members leaving in good standing who have at least fifteen (15) years of service but less than twenty (20) years of service, upon separation from the agency for any reason other than normal retirement (defined by FRS or contract city) or the death of the bargaining unit member will receive, upon separation twenty five (25%) percent of his /her unused accumulated sick leave up to a maximum of two hundred forty (240) hours, computed at the bargaining unit members current rate of pay.

Bargaining unit members leaving in good standing who have at least fifteen (15) years of service but less than twenty (20) years, upon normal retirement (defined by FRS or contract city) or the bargaining unit members death, will receive, upon separation sixty five (65%) percent of his/her unused accumulated sick leave up to a maximum of six hundred twenty four (624) hours, computed at the bargaining unit members current rate of pay.

## Twenty (20) Years of Service

Bargaining unit members leaving in good standing who have at least twenty (20) years of service upon separation from the agency for reasons other than normal retirement (defined by FRS or contract city) or the death of the bargaining unit member will receive, upon separation twenty five (25%) percent of his/her unused accumulated sick leave up to a maximum of two hundred forty (240) hours, computed at the bargaining unit members current rate of pay.

Bargaining unit members leaving in good standing who have at least twenty (20) years of service, upon normal retirement (defined by FRS or by contract city) or the bargaining unit members death, will receive, upon separation one hundred percent (100%) of his/her unused, accumulated sick time up to a maximum of nine hundred sixty (960) hours, computed at the bargaining unit members current rate of pay.

## Twenty-Five (25) Years of Service

Bargaining unit members leaving in good standing who have at least twenty-five (25) years of BSO or combined BSO and contract city sworn service, or the bargaining unit members death, will receive, upon separation one hundred percent (100%) of his/her unused accumulated sick leave up to a maximum of one thousand one hundred sixty (1160) hours, computed at the bargaining unit members current rate of base pay.

However, in the event that another bargaining unit is offered and accepts a higher maximum sick leave payout upon normal retirement for bargaining unit members with at least twenty five (25) years of service as part of its negotiations for Fiscal Years 2010/2011, 2011/2012 with the exception of any increases received pursuant to their imposition by a legislative body, the sick leave payout will be increased for this bargaining unit.

# ARTICLE 33

## PROBATION

33.1   The probationary period shall be regarded as an integral part of the employment process. It shall be utilized for closely observing the bargaining unit member's work and for securing the most effective adjustment of the new bargaining unit member to his/her position.

33.2   During a bargaining unit member's probationary period, he/she serves in the position of Lieutenant at the will and pleasure of the Sheriff. Accordingly, a probationary bargaining unit member who has been promoted may not grieve, or otherwise challenge by any other available procedure, any decision involving, demotion to his/her former position.,

33.3   During the initial probationary period, no bargaining unit member may request a voluntary transfer.

33.4   The Sheriff may evaluate the performance of bargaining unit members up to four (4) times per six (6) months during their probationary period.  Any such evaluation may be discussed with the bargaining unit member and the bargaining unit member will be counseled as to any problems that may reasonably cause him/her not to be granted permanent status.

33.5   In the event a bargaining unit member was promoted from a lower law enforcement rank to Lieutenant, that bargaining unit member shall serve a probationary period of six (6) months of continuous employment from the date of promotion. Effective immediately upon promotion, the bargaining unit member will receive no less than the basic rate of pay for Lieutenant.  Within ninety (90) days of being promoted, a bargaining unit member may voluntarily "retreat" to his/her former classification with no loss of previous seniority. If the bargaining unit member chooses to remain in the position of Lieutenant, and does not voluntarily "retreat" to his/her former rank, upon the expiration of the six (6) month probationary period, the Sheriff may recommend retention of the bargaining unit member as Lieutenant. In the event the Sheriff fails to approve retention, the bargaining unit member shall automatically revert to his/her former position, without loss of (previous) rights or benefits.  Such reversion may not be appealed through the grievance/ arbitration procedure.

## ARTICLE 34

### <u>SAVINGS CLAUSE</u>

If any provision of this Agreement, or the application of such provision thereof, shall be rendered or declared invalid by any court of competent jurisdiction, the remaining parts or portions of this Agreement shall remain in full force and effect. In the event of the foregoing, the parties agree to renegotiate a replacement provision, after written notice.

The bargaining unit reserves the right to decline any benefit that may inure to it as a result of any of the "me too" clauses within the contract.

# ARTICLE 35

## REPRODUCTION OF AGREEMENT

BSO will provide 25 copies of this Agreement to the Union. This Agreement will be made available on the BSO Intranet site, BSO Informant.  BSO will provide to the PBA one (1) electronic disc copy for reproduction.

## ARTICLE 36

## TERM OF AGREEMENT

This Agreement shall become effective upon its ratification by both parties and, thereafter, shall be effective from October 1, 2010 through and including September 30,2012. There shall be re-openers as referenced in Article 17 – Salary and Article 29 - Insurance.

With respect to negotiations for re-openers of  Article 17 – Salary  and Article 29 – Insurance and for a successor agreement, the parties agree to commence bargaining no later than April 15, of each contract year and agree to meet a minimum of two (2) times per month.

AL LAMBERTI
SHERIFF OF BROWARD COUNTY

Date: ___11 – 5 – 10___

BROWARD COUNTY POLICE
BENEVOLENT ASSOCIATION

By: _____

Title: PRESIDENT

Date: 11 - 5 - 10

OFFICE OF THE GENERAL COUNSEL

_____ 11/5/10
                    Date

GENERAL COUNSEL, BROWARD
COUNTY POLICE BENEVOLENT
ASSOCIATION

_____
                          Date

WITNESSES:

WITNESSES:

**APPENDIX "A"**

# MONTHLY INSURANCE RATES

| Plan Name | 2011 HMO Open Access Referrals are not required for Covered Services (*) | | 2011 HMO Premier Plan (Gated) | 2011 POS Premier Plus Plan | |
|---|---|---|---|---|---|
| | In-Network | | In-Network | In-Network | Out of Network |
| Referrals Required for Specialists Visits | No | | Yes | Yes | N/A |
| | Member Responsibility | | Member Responsibility | Member Responsibility | |
| Plan Deductibles | | | | | |
| Annual Deductible (Individual / Family) | $150 / $300 *(unless otherwise noted any benefits not subject to copayment is subject to deductible)* | | $100 / $200 *(unless otherwise noted any benefits not subject to copayment is subject to deductible)* | $100 / $200 *(unless otherwise noted any benefits not subject to copayment is subject to deductible)* | $250 / $500 |
| Outpatient Medical Services | | | | | |
| PCP Office Visits | $15 Copay | | $15 Copay | $20 Copay | 30% after deductible |
| Specialist Office Visits | $25 Copay | | $20 Copay | $25 Copay | 30% after deductible |
| Emergency and Urgent Care Services | | | | | |
| Emergency Care in Hospital Emergency Room | $150 Copay | | $150 Copay | $150 Copay | $150 Copay |
| Emergency Care in Urgent Care Center | $25 Copay | | $20 Copay | $25 Copay | 30% after deductible |
| Emergency Care in Physician's Office | $15 PCP $25 Specialist | | $15 PCP, $20 Specialist | $20 PCP; $25 Specialist | 30% after deductible |
| Ambulance | No Copay after deductible | | No Copay after deductible | No Copay after deductible | 30% after deductible |
| Prescription Drug Rider (2) | | | | | |
| Tier 1/Tier 2/Tier 3/Tier 4 (30-day supply) at Participating Pharmacy | $10/$25/$40/20% | | $5/$15/$30 | $5/$15/$30 | 30% after deductible |
| Mail Order (90-day supply) | $20/$50/$80/ Not applicable | | $10/$30/$60 | $10/$30/$60 | Not Covered |

(*) PCP referrals are not required to obtain Covered Services, however certain Covered Services require Prior Authorization. Please refer to the Certificate of Coverage for further details on Prior Authorization requirements.

(2) If you or your physician requests a brand name medication when a generic is available, you must pay 100% of the difference in price between the generic and brand name medication, plus the applicable brand copayment.

Coventry fully intends to comply with all federal mandates, including health care reform. At this time, final rules and regulations have not been issued therefore we are unable to determine what specific changes may occur effective 2011 and any potential cost associated with such changes.

*Additional information is available through the insurance provider, Employee Benefits and the BSO Informant.*

| 2011 Monthly Insurance Rates | | |
|---|---|---|
| **Medical** | | |
| | Single | Family |
| HMO - Open Access | $0.00 | $0.00 |
| HMO - Gated | $21.00 | $60.00 |
| POS Premier Plan | $35.32 | $114.80 |
| | | |
| **Dental** | | |
| | Single | Family |
| DHMO Plan | $0.00 | $14.56 |
| PPO Plan | $7.96 | $46.16 |
| Indemnity Plan | $19.28 | $75.34 |

## APPENDIX "B"

## Salary Schedule

| Step | Effective October 2010 |
|---|---|
| 1 | $ 63,861 |
| 2 | $ 67,054 |
| 3 | $ 70,406 |
| 4 | $ 73,927 |
| 5 | $ 77,623 |
| 6 | $ 81,505 |
| 7 | $ 85,580 |
| 8 | $ 89,859 |
| 9 | $ 94,352 |
| 10 (12 Yr Longevity) | $ 99,069 |
| 11 (18 Yr Longevity) | $ 104,023 |
| 12 (20 Yr Longevity) | $ 106,104 |

# APPENDIX "C"

## Letter of Understanding – DROP/Retirement Exception, Deputy/Sergeant and Lieutenants



**Broward County Sheriff's Office**
2601 West Broward Boulevard
Fort Lauderdale, FL 33312
(954)831-8100

April 13, 2005

Dick Brickman, President
Broward County Police Benevolent Association, Inc.

**RF: Letter of Understanding – DROP/Retirement Exception, PBA Deputy/Sergeant and Lieutenants**

Dear Sir:

The Broward Sheriff's Office and Broward County Police Benevolent Association mutually agree this letter of understanding will serve as the interpretation and application as to Article 37.7 *Vacations & Holidays* within the PBA Deputies/Sergeant collective bargaining agreement and Article 30.7 *Vacation & Holidays* within the PBA Lieutenants collective bargaining agreement; between the parties effective October 1, 2004 through September 30, 2007.

The language as outlined in both collective bargaining agreement is as follows:

> "DROP/Retirement Exception: Those bargaining unit members who are within one (1) year of retirement/participation in DROP may carry over up to one (1) year of accruals of annual leave and exceed the three-hundred and twenty hour (320) (or four hundred hour (400) – Lieutenants) cap or the bargaining unit members grandfathered cap up to a maximum of five hundred (500) hours of annual and holiday leave. A bargaining unit member must sign an irrevocable request at the time of his/her decision."

The following items will serve as clarification of the above language:

1. Bargaining unit members may carry over up to one (1) year of accruals and exceed the bargaining unit members cap up to a maximum of five hundred (500) hours within one (1) year of the bargaining unit member entering DROP or the bargaining unit members retirement date.

2. This carry over provision will be applied to eligible bargaining unit members at the end of the applicable calendar year. Should the bargaining unit member not be entering DROP or retiring and separating within one (1) year, the bargaining unit member is subject to the provision in which any hours over the bargaining unit members cap are forfeited at the end of each calendar year per the collective bargaining agreement.

3. The bargaining unit member shall receive the benefit of carrying over one year of accruals to a maximum of five hundred hours, however, the bargaining unit member will not receive an adjustment to the bargaining unit member's cap.

4. At the time a bargaining unit member enters DROP, the bargaining unit member will be eligible to be paid all accrued annual and holiday leave hours up to the bargaining unit members cap plus one year of accruals to a maximum of 500 hours.

   At the time a bargaining unit member retires and separates from the agency, the bargaining unit member will be eligible to be paid all accrued annual and holiday leave hours up to the bargaining unit members cap plus one year of accruals, to a maximum of 500 hours.

5. Should the bargaining unit members' actual grandfather cap exceed the 500 hour maximum, the bargaining unit member shall only be eligible to be paid at the time of entering DROP or retiring and separating from the agency, a maximum of the employee's actual grandfather cap. For example, the bargaining unit member has a cap of 680 hours. The bargaining unit member is not eligible to receive payment for 580 hours plus up to one year of accruals. The bargaining unit member is only eligible to be paid to their grandfather cap of 680.

6. The bargaining unit member must sign an irrevocable request at the time of his or her decision. This should be satisfied by providing Human Resources with a memorandum at the end of the calendar year in which in the bargaining unit member intends to carry over the eligible hours over the bargaining unit members' grandfather cap for the purpose of entering DROP or retiring and separating from the agency in the following year. Should the bargaining unit member not enter DROP or retire and separate from the agency as indicated on the request, the bargaining unit member shall forfeit those hours carried over in excess of the bargaining unit members grandfather cap.

This interpretation and application shall be retro-actively effective October 1, 2004 for the term of the existing contract expiring September 30, 2007. Should this letter accurately reflect our understanding and agreement please indicate by signing below.

_____     4/29/06
President                        Date
Broward County Police
Benevolent Association

_____     4/19/06
Broward Sheriff's Office          Date

- 55 -

## APPENDIX "D"

### MEMORANDUM OF UNDERSTANDING
### LAW ENFORCEMENT LIEUTENANTS BARGAINING UNIT
### REGARDING SALARY COMPRESSION

THIS MEMORANDUM OF UNDERSTANDING is made and entered this 1st day of October, 2010 by and between the Sheriff of Broward County, Florida (hereinafter referred to as "SHERIFF") and Broward County Police Benevolent Association, Law Enforcement Lieutenants (hereinafter referred to as "BCPBA").

### W I T N E S S E T H:

**WHEREAS** on or about October 1, 2010, the SHERIFF and BCPBA entered into a Collective Bargaining Agreement for the period October 1, 2010 to September 30, 2012;

**WHEREAS** the parties' Collective Bargaining Agreement addresses bargaining unit members' salary, including salary range, step and longevity step increases as set forth with particularity in Article 17 thereof;

**WHEREAS** the parties acknowledge that matters pertaining to compression between the base salaries of the rank of sergeants and lieutenants have been identified by BCPBA;

**WHEREAS** the parties desire to address the compression issue as provided for by the terms set forth herein; and

**NOW THERFORE** the parties agree as follows:

1. The Sheriff agrees to convene a review board to include 2 representatives of the BCPBA to address the issue of compression as it relates to the base salary range, to include longevity issues, for members of this bargaining unit. This compression study is part of a larger agency-wide compensation review.

2. The committee will be convened no later than November 1, 2010.

3. The parties agree that findings of the committee will be addressed in the second year wage re-opener of the contract for the fiscal year beginning on October 1, 2011 and ending on September 1, 2012.

4. Every effort will be made to correct the compression issues regarding base salary ranges between members of this bargaining unit and the job classification immediately below, to wit: the rank of sergeant, by maintaining a minimum ten percent (10%) differential between these ranks should there be adequate funding to achieve this differential.

5. Should there be inadequate funding to achieve the differential for the fiscal year beginning on October 1, 2011 and ending on September 1, 2012, this matter will again be addressed in successor contract negotiations thereafter until the compression issue is addressed and corrected. At that time every effort will be made to correct the compression by maintaining a ten percent (10%) differential between these ranks should there be adequate funding to achieve this differential.

**IN WITNESS WHEREOF**, the parties execute this Memorandum of Understanding on the date(s) indicated below:

**Pat Hanrahan, President**
**Broward County PBA**

Date: 11-5-10

**Al Lamberti, Sheriff**
**Broward Sheriff's Office**

Date: 11-5-10

Approved as to form and
legal sufficiency:

By: _____
**Claudia Estrada**
**Assistant General Counsel**
**Broward County PBA**

Approved as to form and
legal sufficiency:

By: _____ 11/5/10
**Judith W. Levine**
**General Counsel**
**Broward Sheriff's Office**